**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 05-80183-CIV-SEITZ/GOODMAN

BOCA RATON COMMUNITY HOSPITAL,
INC., *et al.*,

    Plaintiffs,
v.

TENET HEALTHCARE CORPORATION,

    Defendant.
_____/

## ORDER ON EMERGENCY MOTION TO INTERVENE AND TO MODIFY THE SEPTEMBER 15, 2005 PROTECTIVE ORDER

THIS MATTER is before the Court on Lorillard Tobacco Company's ("Lorillard") Emergency Motion to Intervene and to Modify the September 15, 2005, Protective Order. (DE# 390, 7/23/10.) Having reviewed the applicable filings and the law, and for the reasons stated below, this Court grants Lorillard's motion.

**I.    Procedural Context**

This case was originally closed on August 1, 2007, when the Court entered final summary judgment for Tenet Healthcare Corporation ("Tenet"). (DE# 380.) Lorillard filed its emergency motion on July 23, 2010, and the motion was referred to me on July 26, 2010. (DE# 390 & 393.) Because of the emergency nature of this motion,[1] this Court set an initial expedited briefing schedule by order dated July 26, 2010. (DE# 394.)

On July 27, 2010, Tenet filed a Motion for Extension of Time to File a Response to Lorillard Tobacco Company's Emergency Motion to Intervene and to Modify the September 15, 2010, Protective Order. (DE# 395.) This Court granted Tenet's Motion

---

[1] The expedited briefing schedule was triggered by Lorillard's representation that it and Tenet faced an impending August 6, 2010 discovery deadline in a separate suit currently pending in a St. Louis, Missouri state court. According to Tenet, however, the parties have agreed to allow discovery and depositions of certain matters past this deadline. (Def.'s Resp. ¶6, DE# 399, 7/30/10.)

for Extension of Time and allowed Tenet and any other interested party until the end of business (5 P.M.) on July 30, 2010, to file its response, and ordered Lorillard to reply by August 2, 2010, at Noon, if Lorillard wished. (DE# 396.) This Court also entered an Order on Briefing of Issues that asked the parties to clarify certain key factual issues. (DE# 397, 7/28/10.)

Tenet's response argues that the motion to intervene should be denied because it is untimely, that Tenet will be incredibly burdened by analyzing these documents only four months from trial, and because the documents Lorillard seeks are irrelevant to the Missouri litigation. (DE# 399, §I.B.) Tenet did not directly address the propriety of modifying the protective order should this Court permit Lorillard to intervene, but it suggested that the discovery sought included "confidential and sensitive documents." (*Id.* at p. 2.)

Boca Raton Community Hospital ("Community Hospital") filed its own response, explaining that Lorillard had agreed to narrow the scope of its subpoena to only certain documents and the transcripts and exhibits thereto of Tenet employees and former employees. (DE# 398, ¶6.) Community Hospital also advised that it could produce the requested materials by August 6, 2010, without undue burden, cost or prejudice. (*Id.* at ¶9.) Lorillard filed a reply on August 2, 2010. (DE# 400.) This reply was not filed until 4:58 P.M., nearly five hours past the Noon deadline set in this Court's July 27, 2010, Order. (DE# 396.) Lorillard did not seek an enlargement of time. The Court has discretion to consider late-filed submissions and it will do so here, but the Court urges the parties to comply with deadlines or to seek modifications if additional time is required.

**II.     Factual Background**

On March 2, 2005, Community Hospital filed a putative class action against Tenet. (DE# 1.) The lawsuit alleged that Tenet unlawfully inflated its charges in order to

2

receive excessive Medicare payments known as "outlier" payments.[2]  (Lorillard Emergency Mot. ¶3.a, DE# 390; Pl.'s Resp. ¶2, DE# 398; Def.'s Resp. pp. 1-2, DE# 399.)  This case was resolved by way of summary judgment in Tenet's favor three years ago, but a protective order entered on September 15, 2005, remains in effect and prohibits the parties from disseminating documents produced during discovery that were marked as confidential.  (DE# 91, ¶23.)  By the express terms of the protective order, this Court retains jurisdiction to resolve any dispute concerning the use of any material designated confidential.  (*Id.* at ¶22.)

Several Tenet subsidiaries[3] are currently plaintiffs in a pending state court action in St. Louis, Missouri: *City of St. Louis, et al. v. American Tobacco Co., et al.,* Case No. 982-09562-01 (the "Missouri litigation").  Although this Court has little direct knowledge regarding the Missouri litigation, recent filings in this case explain that the Missouri litigation was filed "by several Missouri hospitals seeking to recover unreimbursed costs for healthcare provided to individuals as a result of tobacco use and environmental tobacco smoke."  (Def.'s Resp. p. 1, DE# 399.)  Certain Tenet subsidiaries became plaintiffs in the Missouri litigation in 1999.  (*Id.*)  Lorillard is one of the defendants in the Missouri litigation and was served on November 23, 1998.

On June 21, 2010, Lorillard served a subpoena *duces tecum* on Community Hospital.  (DE# 390-2.)  This subpoena sought all documents produced by Tenet in this lawsuit, as well as all deposition transcripts and exhibits of Tenet's present and former employees from this case.  (*Id.*)  This subpoena was specifically authorized by the court in the Missouri litigation.  (DE# 390-3.)  Community Hospital had previously notified

---

[2]  According to Community Hospital's Complaint, acute care hospitals are compensated for a procedure by Medicare based upon an efficiently run hospital's average cost to perform that same procedure.  (DE# 1, ¶43, 3/2/05.)  An "outlier" payment is made by Medicare to an acute care hospital when the cost of a particular patient's care greatly exceeds this average.  (*Id.*)

[3]  This Order will refer to Tenet Healthcare Corporation and all of its subsidiaries simply as Tenet.

3

Tenet of the subpoena on June 23, 2010, and on July 2, 2010, Tenet objected to production on the ground that the materials were protected by the protective order and were also irrelevant, proprietary, and confidential.  (DE# 390-4.)  On July 8, 2010, Tenet moved the special master in the Missouri litigation for, among other relief, a protective order prohibiting further discovery on the outlier issue and to quash several of Lorillard's subpoenas.  (Master's Findings, Rulings and Recommendations of July 15, DE# 390-5.)

At a recent hearing before the special master in the Missouri litigation, Tenet argued that the outlier issue was irrelevant to the Missouri litigation because the damages Tenet requested there were calculated using Tenet's costs, not its charges.  (Hr'g Tr. 14:8-15:15, DE# 399-1.)  In his July 15, 2010, Master's Findings, Rulings and Recommendations, the special master denied both of these motions.  (DE# 390-5, pp. 3-4.)  By doing so, the special master not only paved the way for Lorrilard's emergency motion in this case, but also allowed additional depositions to go forward on the outlier issue in the Missouri litigation (*Id.* at pp. 3-4.)  The special master did not expressly rule on the issue of whether the outlier issue was relevant, however.  (DE# 390-5. *See also generally* Hr'g Tr., DE# 399-1.)

### III. Analysis

Lorillard seeks two separate and distinct forms of relief in its emergency motion: permissive intervention and modification of a protective order.  This Court will therefore first address the threshold issue of whether permissive intervention is appropriate.

#### a. Lorillard May Intervene for the Limited Purpose of Seeking Modification of the Protective Order

In pertinent part, Federal Rule of Civil Procedure 24(b) states that: "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b)(1)(B) "gives the district court discretion to permit intervention 'when an applicant's claim or

defense and the main action have a question of law or fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (quoting *Athens Lumber Co., Inc. v. F.E.C.*, 690 F.2d 1364, 1367 (11th Cir. 1982)).  "'If there is no right to intervene under Rule 24(a), it is wholly discretionary with the court whether to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.'" *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991)).

Permissive intervention is the proper method for a nonparty to seek modification of a protective order.  *Pansy v. Borough of Stroudsberg*, 23 F.3d 772, 778 (3d Cir. 1994). *Accord United Nuclear Corp. v. Cransford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 783 (1st Cir. 1988), *cert. denied*, 488 U.S. 1030; *Marshall v. Planz*, 347 F. Supp. 2d 1198, 1201 (M.D. Ala. 2004). *See also In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979) (holding "There is no question that the procedurally correct course . . . would have been first to obtain status in the suits as intervenors" where two congressman sought to subpoena documents from a party to a case where compliance was prevented by a protective order).

### i. Lorillard's Emergency Motion is Timely

When considering the timeliness of a permissive motion to intervene, which would affect the rights of the existing parties in the existing litigation, the Eleventh Circuit considers "(1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's

5

failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002). *Accord United States v. Jefferson County*, 720 F.2d 1511, 1516 (11th Cir. 1983); *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977); *Florida Key Deer v. Brown*, 232 F.R.D. 415, 416 (S.D. Fla. 2005).

"Timeliness is to be determined from all the circumstances." *N.A.A.C.P. v. New York*, 413 U.S. 345, 366 (1973). "'[A]bsolute measures of timeliness,' such as 'how far the litigation has progressed when intervention is sought' and 'the amount of time that may have elapsed since the institution of the action' are not to be relied upon: 'the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied.'" *Meeks v. Metropolitan Dade County*, 985 F.2d 1471, 1479 (11th Cir. 1993) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 266 (5th Cir. 1977)), *abrogated on other grounds by Dillard v. Chilton County Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007).

Rule 24(b)'s timeliness requirement is to "prevent prejudice in the adjudication of the rights of the existing parties, **a concern not present when the existing parties have settled their dispute and intervention is for a collateral purpose**." *United Nuclear Corp.*, 905 F.2d at 1427 (emphasis supplied). Where, as here, intervention is sought for the limited purpose of modifying a protective order, the requirement of timeliness is "quite broad." *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 245 F.R.D. 308, 315 (D. Conn. 2009). *See also E.E.O.C. v. National Children's Ctr., Inc.*, 146 F.3d 1042, 1047 (D.C. Cir. 1998) (vacating a district court denial of permissive intervention and finding that a motion was timely almost two years after the case had settled); *State ex. rel. Butterworth v. Jones Chems., Inc. (Florida)*, 148 F.R.D.

282, 286 (M.D. Fla. 1993) ("Consequently, delays of as much as three years from the termination of the case have been found to be not unreasonable"). Based on these factors, this Court concludes that Lorillard's motion to intervene is timely.

### 1. Lorillard's Alleged Failure to Act Soon Enough Is Not Fatal to Their Emergency Motion

Tenet's primary timeliness argument is that Lorillard knew or should have known about its interest in intervening as early as March 8, 2005. (Def.'s Resp. §I.A., DE# 399.) Even if this were true, the Court believes it is not "fatal" given the limited purpose of Lorillard's request. The cases relied on by Tenet for the proposition that delay is in itself fatal involved factually dissimilar situations where the proposed intervention was not limited, narrow, and focused. Rather, those cases involved motions filed to upset previously granted relief or where intervention would have delayed or effected the adjudication of the existing parties' rights.[4]

Unlike many proposed intervenors, Lorillard is not seeking to become a party to this long-closed case. Lorillard is not pursuing any substantive claims, raising any new defenses, seeking injunctive relief, demanding damages, urging rescission of a settlement agreement, or alleging an ownership interest in property. Likewise, Lorillard is not otherwise seeking to address any of the *merits* of the claims at issue in this case.

---

[4] In *Angel Flight of Georgia., Inc. v. Angel Flight of America, Inc.*, 227 F. App'x 817, 818 (11th Cir. 2008), the purpose of the intervention was to modify a permanent injunction; in *Reeves v. Wilkes*, 754 F.2d 965, 970 (11th Cir. 1985), the purpose of the intervention was to modify a consent decree entered after long and complex settlement negotiations; in *In re CP Ships, Ltd. Sec. Litig.*, MDL Case No. 8:05-MD-1656-T-27TBM, 2008 WL 2473684, at *2-3, (M.D. Fla. June 19, 2008), intervention would have delayed the entering of an already negotiated settlement and the Court found that the proposed intervenor had no legally cognizable interest in the case; in *Hofmann v. EMI Resorts*, 689 F. Supp. 2d 1361, 1380, (S.D. Fla. 2009), the proposed intervention would have delayed resolution of the case by adding sixty-five additional defendants and would have threatened an existing party's ability to finance the lawsuit; in *Empire Blue Cross & Blue Shield v. Janet Greeson's A Place for Us, Inc.*, 62 F.3d 1217, 1220 (9th Cir. 1995), the court found that the protective order was "a "substantial part of the consideration for the settlement agreement" and that the possibility of its modification would cause the settlement to "unravel;" and in *Banco Popular v. Greenblatt*, 964 F.2d 1227, 1232 (1st Cir. 1992), the court determined "that post-judgment intervention would circumvent the settlement and cause unfair prejudice to the appellees."

Lorillard's sole purpose is limited, narrow, and specific – to permit the production of documents pursuant to an already-served subpoena in another case by modifying a protective order that currently prevents such production. Therefore, Lorillard's emergency motion will not – and, indeed, cannot – affect in any way the adjudication of the rights of the parties in *this* case. Regardless of whether Lorillard is allowed to intervene, the final result of *this* case will still be that Tenet prevailed on summary judgment.

### 2. Tenet Would Not Be Unduly Prejudiced

Tenet also states that it will be prejudiced by having "to review and analyze all these new documents and transcripts" four months before trial. (Def.'s Resp., §I.B, DE# 399.) However, these documents are Tenet's *own* documents, produced to Community Hospital in this case. Tenet's subsidiaries should already be familiar with the materials sought by Lorillard's subpoena. Moreover, Tenet or its subsidiaries presumably attended the depositions and should be familiar with these, as well. Lorillard has agreed to narrow the scope of its subpoena and it appears that the Missouri litigation is already a complex and extremely time-consuming case. Tenet's claim of undue burden is unpersuasive, especially given the magnitude of the Missouri litigation.

More to the point, any opposition to this proposed intervention which is based on the prejudice that supposedly would be suffered in the Missouri litigation misperceives the "inquiry of timeliness." *In re Ethylene*, 245 F.R.D. at 316. "In deciding whether to permit a party to intervene under Rule 24(b), courts do not generally consider the status of collateral litigation [*e.g.*, the Missouri litigation]. Rather, the determinative inquiry is the status of the underlying litigation and whether allowing another party to intervene is prejudicial to the existing parties [as it pertains to the underlying litigation] . . ." *Id. Accord United Nuclear Corp.*, 905 F.2d at 1427.

The specific Tenet party before this Court will suffer no prejudice in the instant case if intervention is permitted. Tenet already obtained summary judgment three years ago and the intervention required by Lorillard will not change that. Community Hospital, which does not object to intervention, will be doing all of the work necessary to provide Lorillard copies of the requested materials. (Pl.'s Resp. ¶8, DE# 398.)

### 3. Lorillard May Face Great Prejudice

Conversely, the prejudice that Lorillard would suffer should the Court deny its emergency motion may be great. It would appear that at this stage of the Missouri litigation, Lorillard may have no other way to obtain the requested materials. A denial of both intervention and the requested modification of the protective order would amount to an *in limine* ruling by this Court that the outlier issue is irrelevant in the Missouri litigation and that all pretrial discovery on this issue should be foreclosed.

Tenet may well be correct that outlier information is irrelevant, but this Court is not prepared to reach that conclusion based on such a limited record under rushed circumstances.[5] This ruling does not prevent Tenet from re-arguing the issue of relevancy to the Missouri court. However, if this Court were to deny Lorillard's motion, then it would be significantly prejudicing Lorillard if it turns out that the outlier issue is relevant to the experts' damages calculations or to other facts or issues in the Missouri lawsuit.

### 4. No Unusual Circumstances

Concerning the last factor of unusual circumstances, this Court finds that there are none militating for or against a determination that the motion was timely. Tenet itself acknowledged this in its response and therefore it requires no further analysis here. (DE# 399, §1.D.)

---

[5] This concern is especially important here, where the relevancy argument has been offered to the Missouri special master, who has a much greater familiarity with the issues in this case. The special master is allowing some discovery on this issue to go forward.

### ii. Lorillard Satisfies the Common Question of Law or Fact Requirement by Virtue of the Relief Sought

While there does not appear to be an Eleventh Circuit case on point, the Third Circuit has held that the commonality prong is satisfied merely by the fact the proposed purpose of the intervention is to modify a protective order. *Pansy*, 23 F.3d at 778. In addition, "specificity, *e.g.,* that the claim involve . . . the same legal theory, is not required when intervenors are not becoming parties to the litigation. There is no reason to require such a strong nexus of fact or law when a party seeks to intervene only for the purpose of modifying a protective order." *Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992). The commonality requirement has been read loosely by the circuit courts in similar scenarios. *See, e.g.*, *Sunbelt Veterinary Supply, Inc. v. Int'l Bus. Sys. U.S., Inc.*, 200 F.R.D. 463, 465-66 (M.D. Ala. 2001) (citing *Nat'l Children's Ctr., Inc.*, 146 F.3d at 1045; *United Nuclear Corp.,* 905 F.2d at 1427).

This Court does not find it necessary to predict how the Eleventh Circuit would rule on this question, and agrees with Lorillard that the issues in the Missouri litigation are sufficiently similar to the issues in this litigation to present common questions of law or fact. In both cases, Tenet's charges for outlier patients were alleged to have affected the amount of damages at issue. *See In re Ethylene*, 245 F.R.D. at 316 (deciding this prong was satisfied where the difference between the underlying and collateral litigation was that "the damages inquiry is focused on the effect on two different markets"). (Lorillard's Emergency Mot. ¶6.f, DE# 390.)

Moreover, intervention of the limited type here would still be appropriate even if the damages issue was not similar, because the nexus factor is relaxed when the intervention's scope is only to modify a protective order.

### b. Modification of the Protective Order is Appropriate

There is no definitive test to apply to a request to modify a protective order in the Eleventh Circuit, and no party briefed this issue. However, this Court agrees with the Court in *SRS Technologies, Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 530 (N.D. Ala. 2003), that the best practice is to apply "a balancing test to determine whether any justification exists for lifting or modifying the protective order . . . ." *See also In re Grand Jury Proceedings*, 995 F.2d 1013, 1020 (11th Cir. 1993) (rejecting requirement that a prosecutor seeking to present documents to a grand jury demonstrate compelling circumstances to gain access to those documents, which were subject to a protective order in a civil case). As discussed more fully above, if Lorillard is denied access to these documents, then it will be prejudiced in its attempts to gain discovery on the outlier issue. *See also Beckman Indus.*, 966 F.2d at 475 (noting the importance of avoiding duplicative discovery efforts). Conversely, if the modification is granted, Tenet would likely face only the comparatively *de minimis* burden of reviewing new documents, many of which are its own documents.

Any fear that Tenet may have over the further dissemination of its confidential documents[6] is easily remedied by making Lorillard subject to the terms of the existing September 15, 2005, protective order. *See, e.g.*, *In re Linerboard Antitrust Litig.*, 333 F. Supp. 2d 333, 340 (E.D. Pa. 2004) ("Where collateral litigants are concerned, however, the court need not balance prejudice against secrecy because secrecy can be preserved by subjecting the intervenor to the provisions of a protective order"). On balance, the equities clearly favor modification of the protective order.

Consequently, the protective order shall be modified to the extent that Community Hospital is authorized to produce the documents requested in Lorillard's

---

[6] Tenet has not established that the documents in Community Hospital's possession are confidential. Indeed, Tenet has not presented any information on this issue. It has only asserted, in conclusory fashion, that the documents are confidential.

11

subpoena after Lorillard executes Appendix A to the original order and thereby binds itself to that order's terms.

### IV.     Conclusion

This Court finds that intervention by Lorillard for the limited purpose of modifying the September 15, 2005, protective order and modification of that protective order is appropriate. Therefore, it is hereby ordered and adjudged that Lorillard's Emergency Motion to Intervene and to Modify the September 15, 2005, Protective Order is granted to the extent that (i) Lorillard is permitted to intervene for the sole purpose of seeking modification of the protective order, and (ii) the protective order shall be deemed modified to allow Lorillard's receipt of the documents requested in its June 21, 2010, subpoena, as narrowed by its agreement with Community Hospital's counsel, after Lorillard executes Appendix A of the same and provides a copy to Tenet and Community Hospital.

DONE AND ORDERED, in Chambers, in Miami, Florida, this 3rd day of August, 2010.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Patricia A. Seitz
All counsel of record